WILLIAM H. BEST *vs.* CHARLES H. BURGESS.

Norfolk.    December 6, 1945. — January 10, 1946.

Present: FIELD, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Devise and Legacy,* Value of legacy.    *Value.    Will,* Contest.

A legatee under a will has a standing to contest a later will in which he is given less or nothing.

There was no merit in a contention, made by an aged legatee claiming a standing to contest a will on the ground that he was given less thereby than by a prior will of the same testator, that an outright legacy of $10,000 in the later will, which would purchase him an annuity of over $1,900, was less valuable to him than a gift in the prior will of an annuity of $500 protected by a spendthrift clause.

PETITION, filed in the Probate Court for the county of Norfolk on November 1, 1944, for proof of the will of Lizzie J. Burgess, late of Quincy.

A motion to strike out the respondent's appearance was allowed by *Reynolds,* J.    The respondent appealed.

The following is an excerpt from the respondent's brief: "It is his [the respondent's] contention that he has a right to determine under which will the benefits accruing are of the most value to him. There are certain features to the different bequests involved here the benefits of which would vary according to the particular circumstances of the legatee. The will offered for probate provides for an unconditional legacy of $10,000. This legacy is subject to attachment by creditors and its proceeds can be reached and

applied by creditors as long as any part of it remains. . . . [The respondent] may very well feel that the security of the additional payments received from the trust fund represented by the addition to living trust of August 27, 1930, was far more attractive to him than the outright gift of $10,000 provided by the will offered for probate. There can be no contradiction of the mathematical computations contained in the report of material facts, but the appellant contends that those figures are not the final test. It is easy enough to understand. many reasons that . . . [he] may have had in mind to express his preference to take under the prior wills of the decedent rather than under the one offered for probate. Let us assume that . . . [he] is financially embarrassed at this time to the extent that creditors are pressing him for the payment of substantial obligations incurred in past business undertakings so that his entire legacy may be reached and applied in satisfaction of the indebtedness represented by those obligations. His entire benefit under the will offered for probate may go to creditors in payment of his debts. If such a situation should develop, no funds would be available for the purchase of annuities. In such an event the legacy would be of no value to him. Or he may be apprehensive that he may be involved in ventures where he would not care to risk the funds represented by the legacy. Now if the will of 1929 as modified by the codicil of August 27, 1930, or any of the subsequent wills of May, 1932, December, 1932, November, 1934, or February, 1936, are eventually probated, . . . [he] will be assured over and above that set up in the living trust of an additional yearly income of $500. This additional income will be protected by the spendthrift clause of the declaration of trust . . . from any and all claims of creditors and his possession of this income would be assured for the remainder of his life. The finding of material facts by the probate judge to the effect 'that under no set of circumstances could Charles H. Burgess better the position which he occupies under the will offered for probate' is clearly wrong. The appellant submits that the determination of the question as to which of the various wills will

best benefit him is a personal privilege with him and is not a question for the court to pass upon unless it is merely one of mathematical computation. Where as here there is a question which involves his personal preference, the court should not attempt to substitute its judgment for the preference of the person whose welfare alone is involved."

*J. G. Bryer,* (*O. Titiev* with him,) for the respondent.

*E. O. Proctor,* for the petitioner.

WILKINS, J. The respondent appealed from the allowance of a motion to strike out his appearance against the allowance of the alleged will of Lizzie J. Burgess, late of Quincy. The judge made a report of the material facts found by him. G. L. (Ter. Ed.) c. 215, § 11. The testimony is reported.

The petition named a cousin of the decedent as the sole heir at law and next of kin. The respondent, a brother of Frank Burgess, the decedent's late husband, rested his right to contest upon the ground of more favored treatment in an earlier will. The petitioner denied this right on the ground that the respondent would receive more under the will offered for probate than under any previous testamentary disposition.

There is no question but that a will rightly may be contested by a legatee under a prior will who is given less or nothing under the instrument in question. He has a direct pecuniary interest which would be affected by the probate of the later instrument. *Crowell* v. *Davis,* 233 Mass. 136, 139–140. *Conley* v. *Fenelon,* 266 Mass. 340, 344. *Reed* v. *Home National Bank,* 297 Mass. 222, 223–224. The issue here is whether the respondent is entitled to invoke this rule.

Under the will offered for probate, which was dated August 17, 1943, the respondent was given a legacy of $10,000. At the date of the decedent's death, September 10, 1944, the respondent was eighty-seven years and one month of age. His life expectancy was five and one tenth years. The amount of annual income purchaseable by $10,000 would be on a nonrefund basis $1,968.10. An annuity of $500 (given to the respondent under some of the instruments hereinafter mentioned) at the same age could

be purchased for $2,540.50. His wife, Addie M. Burgess, predeceased the decedent. The report of material facts states: "I find that the $10,000 legacy contained in the will presented for probate exceeds in pecuniary value the $500 annuity provision contained in the wills antecedent to 1941. I find that under no set of circumstances could' Charles H. Burgess better the position which he occupies under the will presented for probate." The latter finding the respondent contends is plainly wrong.

In a will of July 15, 1929, it was provided: "4. I give to my trustees hereinafter named Eighty-five thousand (85,000) dollars in trust to invest and reinvest the same and pay the net income therefrom in equal shares to my brother-in-law Charles H. Burgess and his wife Addie Burgess. On the death of either, the whole net income shall be paid to the one surviving, and on the death of both, said net income shall be paid to their son, Forrest R. Burgess, during his life, and when said Charles and Addie and Forrest are all dead the principal of said trust fund shall be paid over to the Young Men's Christian Association of Quincy, Massachusetts." There was also a provision (paragraph 45) that if she should make any gifts or advances to any beneficiary exceeding at one time $100, the bequest to such beneficiary should be diminished by the amount of such gifts or advances.

On August 27, 1930, Old Colony Trust Company and Clift Rogers Clapp executed a declaration of trust acknowledging that they held certain bonds of a face value of $191,000 and of a market value of $187,185, transferred to them by Lizzie J. Burgess, the donor, for the purposes stated. The declaration of trust contained the following: "1. To manage, invest and reinvest said fund and pay from the net income therefrom and if necessary from the principal thereof the following sums: (a) To Charles H. Burgess of Dorchester, Massachusetts, and his wife Addie M. Burgess two thousand five hundred (2,500) dollars each year to be paid to them in equal shares, and on the death of either the whole of said sum each year to the survivor for life. (b) To Forrest R. Burgess, son of said

Charles H. Burgess, five hundred (500) dollars each year during his life. . . . 3. The interest of any beneficiary hereunder either as to income or principal shall not be anticipated, alienated, or in any other manner assigned by such beneficiary and shall not be subject to any legal process, bankruptcy or insolvency proceedings, or the interference or control of creditors or others." On the same date as the execution of the declaration of trust but subsequently thereto, the decedent executed a second codicil to her will which stated in part: "Having recently made certain gifts and provisions for some of the legatees named in said will, I make the following changes in the paragraphs thereof . . . 3. I revoke the gift of eighty-five thousand (85,000) dollars to my trustees for the benefit of Charles H. Burgess, Addie M. Burgess and Forrest R. Burgess in paragraph 4. . . . 10. I give to the Old Colony Trust Company of said Boston and Clift Rogers Clapp, as they are trustees under a declaration of trust dated August 27, 1930, for the benefit of Charles H. Burgess et al, thirty thousand (30,000) dollars, to be added to and become a part of the trust fund therein established and to be held by said trustees under said declaration of trust upon the terms and with the powers therein set forth; but my said trustees are instructed to make the following additions to the annual amounts to be distributed: (a) Five hundred (500) dollars to be added each year to the annual amount to be divided between Charles H. Burgess and Addie Burgess and on the death of either to be paid to the survivor." The provision relative to gifts or advances at any one time exceeding $100 was revoked, and a similar provision raising the amount to $500 was substituted. The judge found: "A trust fund of $85,000 invested at any time since the decedent's death . . . would yield from three and one quarter to three and one half [per cent] gross, based on conservative investments." He also found that "if the will of July 15, 1929, were set up it would be effective in its entirety including the clause for the diminishing of bequests by the aggregate amount of gifts or advances in excess of $100 received by any beneficiary"; and that "the trust instrument of August

27, 1930, was intended by the decedent to be in substitution of the $85,000 trust fund provided in the first will."

It was said by Chief Justice Shaw in *Richards* v. *Humphreys*, 15 Pick. 133, 136, "If . . . a testator, after having made his will, containing a general bequest to a child or stranger, makes an advance, or does other acts, which can be shown by express proof, or reasonable presumption, to have been intended by the testator as a satisfaction, discharge or substitute for the legacy given, it shall be deemed in law to be an ademption of the legacy." See Page on Wills (3d ed.) § 1533. We think that the finding that the trust instrument was intended to be in substitution for the $85,000 trust fund is amply supported by the evidence. The respondent suggests that the trust instrument was a gift to the trustees and not to the respondent. But so in the same sense was the $85,000 trust fund. The technical form of the gift is unimportant. There were in evidence written "Instructions for the will" of July 15, 1929, bearing the signature of C. R. Clapp and reading, "The first column shows the amounts which Mrs. Burgess now intends to give during her lifetime — i.e. probably within a year, the 2nd column the amount to be given in her present will — to be diminished by such amount (i.e. 1st col) as she may give in her lifetime." In a long list appeared the name of Charles H. Burgess, the respective amounts in the first and second columns being "60000" and "85000." On July 7, 1930, the decedent wrote Mr. Clapp: "I would like to give the following amounts from Frank's estate as soon as you can arrange it.

| | | |
|---|---|---|
| Chas. H. Burgess in cash | 5 000.00 |
| "    "    "    " securities in trust — income only | 25 000.00 |
| Addie Burgess    " cash | 5 000.00 |
| "    "    " securities in trust — income only | 25 000.00." |

Then followed proposed gifts to other beneficiaries, the total of those in trust being $160,000, and a statement, "The amounts marked in trust to go to the Y. M. C. A. (Quincy) as in my will." On August 27, 1930, was executed the trust instrument, which showed that the decedent had

given $191,000 in securities, the income to be paid to the persons listed to receive securities in trust in the letter of July 7. On September 2, 1930, the decedent gave $5,000 each to Charles H. Burgess and his wife. A comparison of relative income reveals strong support for the findings. Both parties in their briefs for convenience assume four per cent as the rate of annual return on investments. On this basis the respondent would receive from the $85,000 trust fund $3,400. Under the trust of August 27, 1930, the respondent now receives $2,500, and under the codicil made the same day he would receive $500 additional. Annual income on the total of the two $5,000 gifts at the same rate would be $400. This also would total $3,400. There is nothing in the contention that these $5,000 gifts were not from the decedent because she referred to the estate of her husband as the source of the money. She had been the sole beneficiary under his will, which was probated in 1929.

No new question is raised by later instruments. A will of May 4, 1932, contained the same provisions for Charles H. Burgess and his wife except that the principal sum to be added to the trust fund was increased from $30,000 to $40,000, while the annual payments remained unchanged. There also was a clause providing for the deduction of gifts or advances at any one time exceeding $1,000 except when by "written memorandum" she might indicate otherwise. In three wills dated December 1, 1932, November 22, 1934, and February 18, 1936, the provisions for Charles H. Burgess and his wife remained the same. In a will of March 13, 1941, the provision for addition to the trust fund and for increased annuities was omitted, and instead there were bequests of $5,000 each to Charles H. Burgess and Addie M. Burgess. In so far as any of these instruments provide for an annuity of $500 the respondent would, as the judge found, receive less than under the instrument offered for probate.

The respondent contends that he might prefer to have $500 annually protected by a spendthrift clause, or to take under a will not procured by fraud or undue influence, or

to have a trust in which his son might ultimately take the entire income on $85,000. None of these arguments relates to a direct pecuniary interest of the respondent which might be affected.

*Decree affirmed.*